# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Allison Whitmire,                         ) | C/A No. 3:09-3245-JFA |
|                                           ) | |
|           Plaintiff, ) | |
| v.                                        ) | **ORDER** |
|                                           ) | |
| Michael J. Astrue, Commissioner of        ) | |
| Social Security,                          ) | |
|                                           ) | |
|           Defendant. ) | |
| _____ ) | |

The plaintiff, Allison Whitmire, brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383c. The Magistrate Judge assigned to this action has prepared a Report and Recommendation[1] wherein he suggests that the Commissioner's decision to deny benefits should be affirmed. The Report sets forth in detail the relevant facts and standards of law on this matter, and the court incorporates such without a recitation. The parties were advised of their right to submit objections to the Report and Recommendation which was filed on February 11, 2011. The plaintiff has filed objections to the Magistrate Judge's suggestion of affirmance and the government has responded to such objections.

---

[1]The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02.  The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court.  *Mathews v. Weber*, 423 U.S. 261 (1976).  The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

1

## PROCEDURAL HISTORY

The plaintiff applied for DIB and SSI on August 31, 2004, alleging disability as of April 1, 2003,[2] due to bipolar disorder and attention deficit hyperactivity disorder (ADHD). The plaintiff was 24 years old at the time of the ALJ's decision. She has a limited education and past work experience as a waitress/hostess and cashier. The plaintiff's applications were denied initially and on reconsideration. The Administrative Law Judge (ALJ) held a hearing and later issued a decision on April 26, 2007, concluding that the claimant was not disabled. Upon review by the Appeals Council at plaintiff's request, the Appeals Council remanded plaintiff's claim for further proceedings.

A supplemental hearing was held on April 4, 2008, at which a vocational expert (VE) testified. The ALJ issued a decision on July 22, 2008, finding that the plaintiff was not disabled because based on her residual functional capacity (RFC), vocational factors, and testimony of the VE, the plaintiff can make an adjustment to other work. Once approved by the Appeals Council, the ALJ's decision became the final decision of the Commissioner. Plaintiff thereafter filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner.

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is narrowly tailored "to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir.2002). Section 205(g) of the Act provides, "[t]he findings of the

---

[2] April 1, 2003, is the amended alleged disability date. Plaintiff originally alleged an onset date of September 5, 1983.

Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for" that of the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301– 1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004). This determination of a claimant's disability status involves the following five-step inquiry: whether (1) the claimant is engaged in substantial activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform [his or] her past relevant work; and (5) the claimant can perform other specified types of work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. §

404.1520(a)(4)(i)–(v) (2005)).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform. *See Walls*, 296 F.3d at 290. This determination requires a consideration of "whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir.1981). If the claimant is found to have the ability to adjust to other work, the Commissioner will not find him disabled. 20 C.F.R. § 404.1520(g)(2).

## DISCUSSION

### I.      The ALJ's and Magistrate Judge's Findings

In his decision of July 22, 2008, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 1, 2003, the amended alleged onset date for her disability. At Steps 2 and 3, the ALJ found Plaintiff had severe impairments, but that her condition did not meet or equal the requirement of any of the listings. The ALJ found that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, except that she was limited to simple, unskilled work requiring only infrequent contact with the public. The ALJ found that Plaintiff could not perform her past work but, based on vocational expert testimony, was not disabled because she could perform

4

a significant number of representative occupations that existed in the national economy, including the unskilled, light work of an inspector and hand-packer.

The finding that is relevant to the arguments before this court is the ALJ's finding that plaintiff did not meet the listing for mental retardation, Listing 12.05. On appeal, the plaintiff contends that she meets listing 12.05(C) and that the ALJ's rationale for rejecting this finding is not supported by substantial evidence. The plaintiff further argues that the ALJ did not properly perform the analysis of the evaluating physician opinions. After reviewing the parties' briefs, the Magistrate Judge concluded that there is substantial evidence to support the ALJ's decision to deny benefits and that the Commissioner's decision should be affirmed. In her objections, the plaintiff once again contends that the evidence in the record supports a finding that she is disabled because she meets the requirements of Listing 12.05. She argues that the ALJ failed to review certain evidence in the record and did not give proper weight to the medical source opinions. The plaintiff bears the burden of demonstrating that her impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## II.     Analysis of Objections

Listing 12.05 sets forth the following requirements for mental retardation. It's introductory paragraph states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 CFR Pt. 404, Subpt. P, App. 1. § 12.00. As relevant to the plaintiff's case, 12.05(C)

5

requires a showing that plaintiff has (1) a valid verbal, performance or full scale I.Q. of 60 through 70, and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00 and 12.05(C). Therefore, Listing 12.05 sets forth a two-part inquiry for determining whether a claimant meets the requirements for mental retardation. *See Shoulars v. Astrue*, 671 F. Supp. 2d 801 (E.D.N.C. 2009). First, a claimant must satisfy the diagnostic description of mental retardation, which requires a showing of (1) significantly subaverage general intellectual functioning[3] (2) with deficits in adaptive functioning[4] (3) initially manifested during the developmental period; i.e…. before age 22. Upon making this showing, the claimant must then meet the required severity level of this disorder, which is accomplished by satisfying the criteria of § 12.05(C).

While it is undisputed that the plaintiff satisfies the criteria set forth in subsection (C), the issue before this court is whether the plaintiff satisfies the diagnostic definition of the mental retardation listing analysis, as the ALJ was "not convinced" that she had. (Tr. 23.) More specifically, the ALJ stated:

---

[3]The phrase "significantly subaverage general intellectual functioning" appears also in the definition of mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), which the DSM-IV defines as "an IQ of about 70 or below." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39 (4th ed. 1994).

[4]Listing 12.05 does not define "adaptive functioning." Regulations promulgated by the SSA provide that "[t]he definition of [mental retardation] … in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (April 24, 2002). Given "the SSA declined to adopt any one of [these] specific definitions, … the introductory paragraph of Listing 12.05 can be met if the individual is found to have, inter alia, deficits in adaptive functioning as defined by any of the [leading] professional organizations." *Durden v. Astrue*, 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

> Turning back to listing 12.05, I recognize that the claimant yielded verbal and full scale I.Q. scores of 69 during testing conducted by Dr. Moss. However, I am not convinced that the plaintiff has 'significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested during the developmental period' i.e., before the age of 22. At the recent hearing, the claimant's attorney made note of page six of Exhibit 1E, which is a Cognitive and Educational Evaluation of the claimant from February 1999. He argues that the narrative found in that report documents deficits in adaptive functioning manifested during the developmental period. I have read that report, and I acknowledge that the claimant had some difficulties in school. However, that report, on page six, specifically says that the claimant had 'low average' cognitive ability with no actual scores. Because there has been questions raised about the claimant's effort on testing by Dr. Hammond, and because the 69 I.Q. scores are at the upper end of the requirements of listing 12.05C, I find that listing 12.05C is not met in this case. Again, I have taken testimony twice from this claimant, who is fairly articulate and presents herself much better than she gives herself credit for.

(Tr. 23–24.) As already noted, Plaintiff appealed this finding. After reviewing the record in this case, the court remands this matter to the ALJ for further proceedings, as the court is unclear as to what the ALJ specifically found; that is whether or not the ALJ found (1) that the plaintiff does not have significantly subaverage general intellectual functioning, or (2) that the plaintiff does not suffer from deficits in adaptive functioning, or (3) that these deficits did not manifest during the developmental period, or (4) a combination of these. Furthermore, the court is unclear of how the ALJ evaluated certain evidence in this case, if he did at all, and what specific weight he gave that evidence in his ultimate conclusion.

Although the ALJ acknowledged Dr. Robert Moss's January 10, 2008 finding that the plaintiff had an I.Q. score of 69, he seems to have discredited this score, in part, because Dr. Joseph K. Hammond, who evaluated the Plaintiff on December 29, 2004, noted that it was hard for him to judge the plaintiff's capacity for persistence and pace during his testing because of her "noncredible performance or at least performance that was of questionable

7

credibility." But the ALJ did not explain why he chose to accept Dr. Hammond's credibility findings from 2004, even though the ALJ acknowledges that Dr. Moss gave the plaintiff more credit than Dr. Hammond and Dr. Moss stated that his I.Q. findings were valid indication of her current level of functioning. *See Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) ("[I]n the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant.").[5] Moreover, the ALJ changed his finding of "severe" impairments in his second decision based on Dr. Moss's assessment of the plaintiff and the I.Q. scores; therefore, the ALJ must have given some significant weight to Dr. Moss's findings, which included the opinion that the plaintiff would have moderate impairment in memory and concentration that would become significant at times with increased anxiety, as well as significant impairment in social functioning.

The ALJ did consider the Cognitive and Educational Evaluation performed on the plaintiff in February of 1999 when she was 15 years old, which ultimately concluded that the plaintiff had "low average" overall cognitive ability. In her objections, however, Plaintiff claims that her overall cognitive ability score was raised considerably by the fact that she performed in the top 3% in "visual processing." She claims that the ALJ should have recognized that she ranked in the lowest 4% in the area of comprehension-knowledge, which tests for "the breadth and depth of knowledge, including the ability to communicate (especially verbally) and the ability to reason using previously learned procedures." (Tr. 97.)

---

[5] In her objections, Plaintiff contends that Dr. Hammond's testing was not normed for individuals who are mentally retarded, which also should have been taken into consideration. (Objections at 7.)

8

Plaintiff contends that her low score in this category supports her I.Q. score of 69, as well as a finding that she had significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before the age of 22. yet, the ALJ did not discuss this fact in his findings. Moreover, the record contains school records, which show that Plaintiff was able to maintain a "C" average, but also struggled in certain areas. The ALJ did not indicate how much weight he gave to this evidence and how it affected his determination.

Lastly, it appears that the ALJ relied on his personal observations, in part, to discredit the plaintiff's claim of significantly subaverage general intellectual functioning with deficits in adaptive functioning, as well as the fact that her I.Q. score fell in the upper end of that required under the Listing. The Commissioner may reject I.Q. scores if they are inconsistent with other substantial evidence in the record, such as conflicting professional opinions or other record evidence indicating that the claimant historically achieved higher scores or has more advanced functional capacities than would be expected from someone with a below-average I.Q. *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003); *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998). But here, the court is not convinced that the ALJ's personal observations, without support from other evidence or professional opinions, can constitute substantial evidence to support the rejection of the plaintiff's I.Q. score.

Under the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), to be deemed mentally retarded one must have "significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)

9

(citing AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 41 (4th ed. 2000)). Since it is not evident from the ALJ's decision as to whether the ALJ conducted the proper analysis in considering the first step of the mental retardation analysis, and given the existence of evidence suggesting the plaintiff suffered from deficits in adaptive functioning in some of the skill areas noted above, the court cannot find the ALJ's opinion is supported by substantial evidence. Moreover, the rationale supporting the administrative decision provided by Defendant's briefing is not evident in the ALJ's decision, and the Court may not speculate as to the reasoning applied by the ALJ. Needless to say, the court does not express an opinion as to the merits of the plaintiff's claims, but only remands this matter to the ALJ for further clarification specifically related to the issue of whether or not the plaintiff meets Listing 12.05.

    IT IS SO ORDERED.

March 28, 2011                                        Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge